## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

C.A. No.04-12092-DPW

MARIA ROSENTHAL, and
ANINA RASTEN
        Plaintiffs,

v.

TOWN OF BROOKLINE, OFFICER GREGORY
GILLIS, OFFICER JOHN CANNEY, OFFICER
JOHN L. SULLIVAN, FIREMAN CHRISTOPHER
MERRICK, JAMES COTTER, OFFICER JOHN DOE,
        Defendants.

### DEFENDANTS, GREGORY GILLIS, JOHN CANNEY, AND CHRISTOPHER MERRICK'S MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF THE PLAINTIFFS' CASE PURSUANT TO F.R.CIV.P 50(a)

The defendants move this Honorable Court to grant judgment in their favor as the plaintiffs have failed to produce any legally sufficient evidentiary basis for a reasonable jury to find that they would be successful as to their 42 U.S.C. Section 1983 claims, M.G.L. c. 12 §§ 11I claims and state tort claims.

I.      STATEMENT OF THE CASE

This is a civil action in which the plaintiffs alleged, federal and state civil rights violations.  In addition, the plaintiffs assert state tort claims for intentional infliction of emotional distress, malicious prosecution, assault and battery and, false arrest/false imprisonment.   Specifically, the plaintiffs allege violations of their Fourth Amendment Right to be free from unreasonable searches and seizures and excessive force as well as a claim for conspiracy under § 1985.    Additionally, the plaintiffs allege violations of their rights actionable pursuant to the Massachusetts Declaration of Rights. (M.G.L. c. 12 § 11I).  Lastly, the plaintiffs assert several state tort claims.   The defendants

now move for judgment as a matter of law and a dismissal of all claims.

II.    **ARGUMENT**

    A.    **THE PLAINTIFFS IN THEIR CASE IN CHIEF HAVE FAILED TO PROVE THAT THE INDIVIDUAL DEFENDANTS USED EXCESSIVE FORCE AND/OR ASSAULT OR BATTERED THEM**

The plaintiffs in their case in chief have failed to prove by a fair preponderance of the evidence that individual defendants, Merrick, Gillis or Canney, used excessive force or assaulted or battered them in violation of their civil rights.  Ms. Rasten when testifying, failed to identify the individual defendants as the officers/persons who allegedly beat her mother or used excessive force on her person. In fact, when asked by her counsel if any of the individuals who beat up her mother or used excessive force where present in the courtroom, Ms. Rasten did not identify the individual defendants who were clearly seated at the defense table.  The only verbal response she gave was something to the effect that she remembered a "gray haired" man washing his hands in the sink. Counsel for the plaintiffs did not call the individual defendants in his case in chief nor has any additional evidence been presented by any other witness that implicates the individual defendants as the alleged perpetrators of excessive force. As such, the plaintiffs in their case in chief have failed to meet their burden of proof and all claims alleging violations of their civil rights based on excessive force and/or assault and battery must be dismissed.

    B.    **THE DEFENDANTS, CANNEY, GILLIS AND MERRICK, NOT VIOLATE THE PLAINTIFFS' FOURTH AMENDMENT RIGHTS TO BE FREE FROM UNLAWFUL SEIZURES OF HIS PERSON**

      **1. Probable Cause To Arrest The Plaintiffs Existed**

The First Circuit summarized the standard to be used in a case such as this where a plaintiff alleges and arrest and detention pursuant to an unreasonable search and seizure:

    The Fourth Amendment guaranty against unreasonable searches of the person,   requires that arrests be based on probable cause.... The "probable cause analysis entails 'an objective

-2-

assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not an assessment of the officer's state of mind at the time the challenged action was taken'...Probable cause will be      found if 'the facts and circumstances within [the officer's] knowledge and of which    [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [plaintiff] had committed or was committing an offense.  Sheehy v. Town of Plymouth, 191 F.3d. 15 (1st Cir. 1999); Fletcher v. Town of Clinton, 196 F.3d 41, 53 (1st Cir. 1999). (quoting United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987); Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 349 (1st Cir. 1995) (internal citations omitted); Riveria v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992).

"In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160,175 (1949).

"Probable cause determinations are, virtually by definition, preliminary and tentative." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004); Burke v. Town of Walpole, 405 F.3d 66 (1st Cir. 2005).   The exact degree of certainty required to establish probable cause is difficult to quantify; it fails somewhere between "bare suspicion" and what would be needed to justify conviction.  Burke v. Town of Walpole, 405 F.3d 66 (1st Cir. 2005); **Valente v. Wallace, 332 F.3d 30 (1st Cir. 2003).**

The District Court in  White v. Town of Marblehead, 989 F.Supp. 345 (D.Mass. 1997), granted summary judgment in favor of defendant police officers who, after receiving a victim's statement that she had been assaulted by a person described as her boyfriend, arrested a man for assault and battery.  The charges against the man were later dismissed.   This Court determined that the victim's statement gave the officers probable cause to arrest; thus, officers were not required to investigate further before effecting arrest, even though purported victim's statement ultimately proved to be unreliable.  White v. Town of Marblehead, 989 F.Supp. 345 (D.Mass. 1997).  In further

explaining it's decision, the Court stated:

> "The officers are obliged to make split-second decisions. Once there is probable cause to believe a crime has taken place, the law has recognized the need for urgent and decisive action. For all they know at the time, lives may hang in the balance. This is particularly the case with complaints of 'domestic' violence, which have been ignored too often, with tragic results. Id. at 349

Decisions from other Circuits demonstrate the low hurdle imposed upon police for a finding of probable cause. In Marx v. Gumbinner 905 F.2d 1503 (11th Cir. 1990), a four year girl old was raped. Her father, who was innocent, was charged with the rape after the girl said "Daddy did this to me' and "Daddy left me outside to sleep in my nightgown, and he did this to me." The only other evidence of the father's guilt was that there was no evidence of a forced entry, and that an intruder would have had to walk directly by the father and his girlfriend while they were sleeping. The Eleventh Circuit found that, despite the girl's, "age, her injuries, and her likely state of mind," her statements could not be disregarded and supported the police officer's conclusion that probable cause existed.

In Brodnicki v. City of Omaha, 75 F.3d 1261 (8th Cir. 1996), the Eighth Circuit considered whether probable cause existed to arrest the plaintiff for an attempted abduction of a 9 year old girl. The Court found that the police "reasonably believed that they were dealing with a credible victim-witness. They acted on a specific, detailed account of events that led them to [the plaintiff's] car, and to [the plaintiff], who fit -the 9-year-old's description of her near-abductor fairly well." Thus, probable cause existed.

In the present case, the defendant officers received a dispatch to 61 Park Avenue, Apt. 4J on a report of a loud disturbance. They knocked on the door to the apartment several times but, got no response, they could hear loud yelling and banging from inside the apartment. Officer Gillis retrieved the keys to the apartment and attempted to assess the situation. The plaintiff, Maria

Rosenthal thwarted every effort made by the officers to assess the situation.  Ms. Ronsethal and her daughter continued to yell and scream at each other.  At one point, Ms. Rosenthal picked up and threw a shower curtain package at her daughter which struck her.  This act was committed in the presence of the officers.   As such, she had committed an domestic assault and battery which under M.G.L. c. 209A § 6, requires immediate arrest by the officers.   Similarly, Ms. Rasten's assaultive behavior towards Officer Canney required arrest.[1]

The facts and circumstances know to the officers at the time of the decision to arrest the plaintiffs were more than sufficient to warrant a prudent officer in believing that the plaintiffs had committed an assault and battery.   Probable cause existed, and judgment as a matter of law must therefore enter in favor for the defendant officers as to the plaintiffs' Fourth Amendment claims for unreasonable search and seizure based on an alleged unlawful arrest.

### C.    THERE IS NO CONSTITUTIONALLY REQUIRED DUTY TO INVESTIGATE

The plaintiffs are expected to argue that had the defendants conducted a more thorough investigation, by speaking with them, probable cause would had been negated.[2]   In many recent cases, the First Circuit has reaffirmed the traditional view of the Supreme Court in Baker v. McCollan, 443 U.S. 137 (1979), that the "constitution does not guarantee that only the guilty will be

---

[1] Christopher Merrick was employed by the Town as a firefighter and did not arrest the plaintiffs.

[2]  The plaintiff's contention raises serious practical difficulties.  As recognized in Tomczak v. Barnstable, 901 F.Supp. 397 (D.Mass. 1995), "police work is difficult enough without imposing unreasonable demands of perfection on every judgment officers are expected to make in ambiguous circumstances."  Indeed, some courts have held that the failure to protect in domestic violence cases is actionable.  See Freeman v. Ferguson, 911 F.2d 52 (8th Cir. 1990); Raucci v. Town of Rotterdam, 902 F.2d 1050 (2nd Cir. 1990).

arrested." <u>Baker</u> at 145.  In <u>Brady v. Dill</u>, 187 F.3d 104 (1st Cir. 1999), the Court granted summary judgment in favor of defendant state troopers who had arrested a plaintiff pursuant to facially valid arrest warrant where it was later determined that the plaintiff was the wrong person sought in the warrant.  The Court stated that in cases of warrantless arrests, that "once the arrest has been properly effected, it is the magistrate and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released." <u>Id.</u> at 111.

In <u>Del Franco-DeJerez v. Burgos</u>, 876 F.2d 1038, 1042 (1st Cir. 1989), the Court acknowledged that once a finding of probable cause has been made, a police officer has no constitutional duty to investigate further to confirm or disprove the original finding.  <u>Del Franco-DeJerez v. Burgos</u>, 876 F.2d 1038, 1042 (1st Cir. 1989).  In <u>Tomczak v. Barntstable</u>, 901 F.Supp. 397 (D.Mass. 1995), the District Court recognized that " criminal suspect has not constitutional right to a perfect investigation.  <u>Id.</u> at 402.  Similarly, in <u>Duca v. Martins</u>, 941 F.Supp. 1291 (D.Mass. 1996), the Court found that "[t]here is no constitutional or statutory requirement that before an arrest can be made, the police must conduct a trial." <u>Id.</u> at 1290.

Regardless of the information the defendants might have obtained from additional witnesses or the plaintiffs themselves. They  would be still faced with their observations at the scene. The facts upon which probable cause arose would not and could not disappear.  There was no duty to further investigate, probable cause was properly found, and judgment should enter for the defendants as the plaintiffs' claims for violations of their Fourth Amendment Rights for illegal search and seizure and false arrest/imprisonment.

## D.   THE INDIVIDUAL OFFICERS ARE ENTITLED TO QUALIFIED

### IMMUNITY[3]

Qualified immunity protects government officials, such as the defendant officers, who wield discretionary powers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) *cited in* Burns v. Loranger, 907 F.2d 233, 235 (1st Cir. 1990). Thus, "[e]ven defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard". Davis v. Scherer, 468 U.S. 183, 190 (1984). The applicability of this defense is a pure question of law and the standard is not demanding. Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987). The plaintiffs have failed to produce any evidence that the defendants acted unreasonably with respect to their arrests.   In fact, many Courts have applied qualified immunity to mistaken identity arrests and detentions. See Brady v. Dill, 187 F.3d 104 (1st Cir. 1999). In a recent Fifth Circuit decision, the Court found that police officers were entitled to qualified immunity where a plaintiff was detained 26 hours on a facially valid warrant which contained his name, date of birth and social security number, despite his claims of innocence. Sanchez v. Swyden, 139 F.3d 464 (5th Cir. 1998); *See also* Sherman v. Four County Counseling Center, 987 F.2d 397 (7th Cir. 1993) (Officer who followed facially valid statutory requirements prior to detaining plaintiff in mental institution entitled to qualified immunity); Blackwell v. Barton, 34 F.3d 298 (5th Cir. 1994) (Officer entitled to qualified immunity for arresting wrong person).

As the Court of Appeals for the First Circuit has stated, the "applicable standard" for

---

[3] The standard for qualified immunity is the same for alleged civil rights violations under both the United States Constitution and the Massachusetts Declaration of Rights. See Duarte v. Healy, 537 N.E. 2d 1230, 1232 (Mass. 1989); see also Dinsdale v. Commonwealth, 675 N.E. 2d 374, 378 (Mass. 1997).

qualified immunity is an objective one and therefore:

> Because qualified immunity does not address the substantive viability of a section 1983 claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity. Amsden v. Moran, 904 F. 2d 748, 751 (1st Cir. 1990).

Issues of qualified immunity require the Court to address two questions. First, the Court must determine whether the right at issue was "clearly established". In this context, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 482 U.S. 635, 640 (1987). Next, the Court must "determine whether defendants reasonably should have comprehended that their specific actions transgressed those "clearly established" rights. Amsden, at 752.

Qualified immunity is a "necessary compromise" between the need to provide remedies to individuals whose constitutional rights have been violated and the necessity of protecting public officials from insubstantial lawsuits which may deter them from carrying out their official responsibilities. Rodriques v. Furtado, 410 Mass. 878, 883 (1991). Qualified immunity protects "all but the plainly incompetent or those who knowingly violated the law" and allows ample room for mistaken judgment. Hunter v. Bryant, 112 S.Ct. 534, 537 (1991) (per curium); Malley v. Briggs, 475 U.S. 335, 343 (1986); Roy v. Lewiston, 42 F.3d 691 (1st Cir. 1994).

It is important that the issue of qualified immunity be decided as soon as possible in order to make the protection meaningful. The Supreme Court has stated because the immunity is

> ...immunity from suit rather than a mere defense to liability ..., we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. Hunter v. Bryant, 116 L. Ed 2d 589 (1991) (citations omitted).

In Hunter, the Court concluded that the question of immunity should be decided by the

Court long before trial.  Also, the Court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed four years after the fact.  For this reason, the defendants urge this Court to rule in their favor at this time as opposed to subjecting them to the burden and expense of further litigation.

### E.    CONSPIRACY UNDER SECTION 1985

In order to state a claim for a conspiracy under §1985(3) the plaintiffs must allege facts that show "(1) two or more persons conspired, (2) to deprive, either directly or indirectly, any person or class of person of the equal protection of the laws or of equal privileges and immunities under the laws, (3) one or more of the conspirators must have done or caused to be done an act in furtherance of the object of the conspiracy, and (4) the plaintiff must have suffered either an injury to person or property or a deprivation of a constitutionally protected right or privilege as a result of the conspiracy <u>Andrade v. Jamestown Housing Authority</u>, 82 F. 3d. 1179, 1192 (1ˢᵗ Cir. 1996)

The Supreme Court construed the second element to require that "there must be some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirator's claims. <u>Id</u>. citing <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102, (1971).

The Seventh Circuit has succinctly summarized the requirements of a conspiracy as follows:

> First, a conspiracy requires an agreement.  Second, the agreement need not be
> overt, but if not, the alleged acts must be sufficient to raise the inference of
> mutual understanding.  Third, acts performed together by the members of a

conspiracy are adequate when they are unlikely to have been undertaken without an agreement. Finally, a list of the alleged conspirators cannot await discovery but must be apparent in the complaint. <u>Kunik v. Racine County</u>, 946 F. 2d 1574, 1580 (7th Cir. 1991).

In a Section 1983 conspiracy case, a plaintiff must allege and prove both a conspiracy and an actual deprivation of rights. <u>Hampton v. Hanrahan</u>, 600 F. 2d. 600, 620-23 (7th Cir. 1979) cert. denied 446 U.S. 754 (1980) (per curiam). A conspiracy, standing alone, is insufficient -- a constitutional deprivation must be alleged and proved. <u>Dixon v. City of Lawton</u>, 898 F. 2d 1443, 1449 (10th Cir. 1990); <u>Villaneuva v. McInnis</u>, 723 F. 2d 414 (5th Cir. 1984). Time and time again, the Federal Circuits have not allowed conspiracy theories to linger indefinitely when mere conclusory allegations absent specific operative facts are alleged. <u>McGillicuddy v. Clements</u>, 746 F. 2d 76 (1st Cir. 1984) (conspiracy allegations against defendants insufficient in the absence of specific fact allegations; phrases such as "jointly in concert" and "under color of state law" were inadequate); <u>San Filippo v. United States Trust Company</u>, 737 F. 2d 246 (2nd Cir. 1984); <u>Scott v. Greenville County</u>, 716 F. 2d 1409 (4th Cir. 1983); <u>Tarkowski v. Robert Bartlett Realty</u>, 644 F. 2d 1204 (7th Cir. 1980); <u>Crabtree by and through Crabtree v. Muchmore</u>, 904 F. 2d 1475, 1481 (10th Cir. 1990); <u>Shaffer v. Cook</u>, 634 F. 2d 1259 (10th Cir. 1980); <u>Pfannstiel v. City of Marion</u>, 918 F. 2d 1178, 1187 (5th Cir. 1990); <u>Spear v. Town of West Hartford</u>, 954 F. 2d 63 (2nd Cir. 1992).

This Court must first consider the objective reasonableness of the challenged conduct. Only if it is determined that the conduct was not objectively reasonable should the court thereafter inquire into the conspiracy. <u>Id</u>.

The plaintiffs have failed to introduce any evidence that the defendants had a meeting of the minds to deprive the plaintiffs of their rights or that such alleged deprivation was motivated by some racial or perhaps otherwise class-based invidiously discriminatory animus. As such, these claims must be dismissed.

F.    **STATE TORT CLAIMS (Count V.)**

    1.    **False Imprisonment**

The tort of false imprisonment is established by the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement. Santiago v. Fenton, 891 F.2d 383 (1ˢᵗ Cir. 1989) Probable cause provides justification. See Julian v. Randazzo, 403 N.E. 2d 931, 934 (Mass. 1980) The claim of false imprisonment, in this case, therefore hinges on the primary determination of whether a false arrest of the plaintiff occurred. Max v. McGrath, 255 Mass. 340, 342, 151 N.E. 137, 138 (1926). The disputed element here is "unlawful."

The state requirement of "reasonable grounds" for an arrest may fairly be equated with the constitutional requirement of "probable cause." Santiago v. Fenton, 891 F.2d at 383.

The facts are clear that the defendants were justified in detaining the plaintiffs pursuant to probable cause and for this reason there has been no evidence of false imprisonment. The plaintiffs have failed to introduce any evidence to support a finding that their detention was unreasonable in any way or for an unreasonable amount of time.

    2.    **Malicious Prosecution**[4]

In order to prevail on a claim of "malicious prosecution", the plaintiffs must prove: 1)

---

[4]Again, firefighter Merrick, did not initiate process against the plaintiffs.

that a prosecution was commenced against them; 2) that it was instituted or instigated by the defendants; 3) that is was malicious; 4) that it has been legally and finally terminated in the plaintiffs' favor; 5) that it was without probable cause; and 6) that it caused the plaintiffs damage.  Wynn v. Rosen, 391 Mass. 797 (1984); Correllas v. Viveiros, 572 N.E. 2d. 7, 10 (Mass. 1991).

    Massachusetts now follows the majority rule that "criminal prosecution is terminated in favor of the plaintiff when the district attorney formally abandons the criminal proceedings by a nolle prosequi or a motion to dismiss." Wynn,  391 Mass. at 800.  A criminal prosecution terminated by nolle prosequi on the basis of a procedural or technical defect will not suffice as a favorable termination." Wynn, 391 Mass. at 801.

    In the present case, the plaintiffs have failed to sustain their burden that 1)  the institution of criminal process against them was done with malice; 2)  without probable cause; and 3)  the criminal proceedings terminated in their favor.   As noted above, there was ample probable cause to commence the criminal proceedings against the plaintiffs.  Accordingly, the plaintiffs have failed to meet their burden of demonstrating that probable cause was lacking and their malicious prosecution claims must be dismissed.


### 3.      False Arrest

    The only requirement for the arrest of the plaintiffs was if there was a fair, reasonable probability that criminal activity is taking or has taken place, determined under an objective standard.  Wagenmann v. Adams, 829 F.2d 196, 206 (1st Cir. 1987).

    "A police officer's initial finding of probable cause justifies not only arrest, but a

reasonable period of continued detention..."  <u>Thompson v. Olsen</u>, 79 F. 2d 552 (1986).

The issue with regard to false arrest is not whether there has been a finding of guilt beyond a reasonable doubt, but whether the arresting officer had probable cause at the time he made the arrest.  A mere alleging a finding of not guilty does not state a Fourth Amendment claim.  <u>Earle v. Benoit</u>, 850 Fd. 2d 836 (1st Cir. 1988).

As noted above, the plaintiffs committed several offenses in the presence of the officers who had sufficient probable cause to place them under arrest.

### 4.        Intentional Infliction of Emotional Distress

The plaintiffs' amended complaint  alleges that the individual defendants  intentionally inflicted emotional distress upon them.  Here in the present case, the plaintiffs have failed to set forth a prima facie case of intentional infliction of emotional distress.

 In order to successfully state a claim for intentional infliction of emotional distress, the plaintiffs must establish the following four elements:

1.    that the actor intended to inflict emotional distress or he knew or should have known that emotional distress was the likely result of his conduct;

2.    that the conduct was "extreme and outrageous" was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community";

3.    that the actions of the defendants were the cause of the plaintiffs' distress; and

4.    that the emotional distress sustained by the plaintiffs was "severe" and of a nature "that no reasonable man could be expected to endure it".

<u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 355 N.E.2d 315, 318-319 (1976).

These standards have been applied in the context of § 1983 actions to police officers in cases of mistaken arrests.  In <u>Kinan v. City of Brockton</u>, 876 F. 2d. 1029 (1st Cir. 1989), the

plaintiff was mistakenly arrested for armed robbery.  The plaintiff asserted claims for intentional infliction of emotional distress.  The Court affirmed directed verdicts for the defendants on this claim, explaining that "[n]either singly nor in combination does the evidence here meet the standards for intentional infliction of emotional distress.  Kinan v. City of Brockton, 876 F. 2d. 1029 (1st Cir. 1989).  Likewise in Dean v. City of Worcester, 924 F. 2d 364 (1st Cir. 1991), the plaintiff was mistakenly identified and arrested as a dangerous escaped felon.  Upon being arrested, he was pushed down, causing his face to hit the sidewalk; an officer placed a gun to his ear and threatened to blow his head off if he moved and detained for 30 minutes in the back of the cruiser until the officers discovered their mistake and released him.  The Court affirmed summary judgment in favor of the defendants on the plaintiff's claim for intentional infliction of emotional distress.   The Court reasoned that "since the officers's conduct in effecting the intended arrest was objectively reasonable in the circumstances, the claims for intentional infliction of emotional distress must fail."  Dean v. City of Worcester, 924 F. 2d 364, 369 (1st Cir. 1991).

In the case at bar, there is no evidence that the defendants knew that the likely result of their conduct would be the infliction of emotional distress.  Courts have ruled that liability does not extend to incidents of mere insults, indignities, threats, annoyances or other trivialities. Foley v. Polaroid Corp., 400 Mass 92, 99 (1987).  It is not enough: "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice'...liability has been found only where the defendant's conduct is so extreme and outrageous as to go beyond all possible bounds of decency, regarded as atrocious and intolerable in a civilized community.  Id. at 90.

-14-

For these reasons, the defendants respectfully submit that this Court dismiss the plaintiffs' claims for intentional infliction of emotional distress.

## III.     <u>CONCLUSION</u>

Based on the above arguments, the defendants respectfully move this Honorable Court to grant judgment in their favor as the plaintiffs have failed to produce any legally sufficient evidentiary basis for a reasonable jury to find that they would be successful as to their 42 U.S.C. Section 1983 and M.G.L. c. 12 §§ 11H and I claims or state tort claims.

The defendants,
By their attorneys,

<u>/S/ James W. Simpson, Jr.</u>
Douglas I. Louison BBO#545191
James W. Simpson, Jr. BBO#634344
MERRICK, LOUISON & COSTELLO
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305